**UNITED STATES of America, Appellee,**

v.

**Steven PETERSON, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Mary PETERSON, Appellant.**

**Nos. 88–1263, 88–1264.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1988.

Decided Feb. 10, 1989.

James Bobenhouse, Cedar Rapids, Iowa (Court-appointed), for Steven Peterson.

Michael W. Fay, Springville, Iowa (Court-appointed), for Mary Peterson.

Richard L. Murphy, Cedar Rapids, Iowa, for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and NICHOL *, Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Steven and Mary Peterson appeal from convictions entered by the district court [1] following a jury verdict. Steven Peterson was convicted of conspiracy to distribute a controlled substance, 21 U.S.C. § 846, tampering with a witness, 18 U.S.C. § 1512(b), solicitation to commit a felony, 18 U.S.C. § 373, three counts of unlawful possession of firearms and ammunition by a convicted felon, 18 U.S.C. § 922(g)(1), unlawful possession of firearms and ammunition by a user of controlled substances, 18 U.S.C. § 922(g)(3), three counts of possession of a

---

* The HONORABLE FRED J. NICHOL, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa.

controlled substance, 18 U.S.C. § 844, and general conspiracy, 18 U.S.C. § 371. Mary Peterson, Steven's wife, was convicted of tampering with a witness, unlawful possession of firearms and ammunition by a user of controlled substances, three counts of possession of a controlled substance, general conspiracy, and obstruction of justice, 18 U.S.C. § 1503. On appeal both Petersons raise a number of issues, including whether certain evidence used at trial was seized consistently with the fourth amendment, whether their indictments sufficiently specified the offenses charged, whether the sentence imposed for the solicitation of a felony conviction was proper, whether admission of a prior criminal conviction of Steven Peterson was reversible error, whether the multiple counts of the indictment violated the fifth amendment's prohibition against double jeopardy, and whether sufficient evidence was presented to support the jury verdict. We find none of their arguments persuasive, and we affirm the judgment of the district court.

Thomas Cheney, Mary Peterson's brother, was arrested for distributing controlled substances. Lonson Luloff, an acquaintance of Cheney, was arrested as a part of the same investigation. Cheney, concerned about Luloff's possible testimony at trial, engaged the help of the Petersons to kill Luloff. Steven assisted in obtaining the services of his childhood friend, Larry Stocks, to act as a hired killer. Mary, whose position with the Evansdale Police Department allowed her access to the State of Iowa's criminal background and driver's license computers, used those machines to discover the address of the elusive Luloff, and to run a weapons check on the gun given to Stocks for the killing.

Meanwhile, since it was obvious that Cheney would be unable to operate his drug business during the upcoming trial, Steven Peterson agreed to assume Cheney's position in May of 1987. Jeff Hayes, who furnished Steven and Cheney with a farmhouse for meetings at which this change was discussed, was also cooperating with the government, and kept the government fully informed about the status of both the drug deals and the scheme

to kill Luloff. On May 15, Hayes placed a telephone call to Cheney, who was monitored by law enforcement officers. Hayes informed Cheney that Luloff would be in a shopping center parking lot early the next morning. When the hired killers visited the parking lot at the appointed time, they were arrested, along with Cheney. That same evening federal agents also obtained a warrant and searched the Peterson home. The warrant was based on information that money used for drug transactions would be found there.

The search of the Petersons' home failed to discover the desired currency. The Petersons, however, when asked during the search, admitted to possessing illegal drugs, including LSD, methanphetamines, morphine, and marijuana, and revealed the location of these drugs to the officers. A .22 caliber handgun and ammunition was also discovered and seized in the course of the search. Finally, the officers observed, but did not seize, several holsters and other weapons paraphernalia, and a slip of paper with a Minnesota telephone number and the name "Larry" written on it. These items were recovered during a second search conducted two days later under a second warrant, and the number on the piece of paper was determined to belong to Larry Stocks, the hired killer now in custody.

A grand jury then returned indictments against the Petersons. Although the other individuals involved all entered plea agreements and cooperated with the government, the Petersons maintained their innocence. The Petersons were tried together, and the jury returned a verdict of guilty on all counts. Steven was sentenced to a total of thirty years in prison, while Mary received a total of five years. These appeals followed.

I.

The Petersons' primary argument is that the district court erred in denying their motion to suppress the evidence taken in the two searches. They argue that the first warrant was not supported by proba-

ble cause, that the items seized during the first search were not listed in the warrant and the seizure was therefore invalid, and that the observations made during the allegedly illegal first search could not be used to establish probable cause for the second warrant. We reject these arguments.

■ Any discussion of probable cause must begin with *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The duty of the officer issuing a search warrant is to make a "practical, common-sense decision" whether a reasonable person would have reason to suspect that evidence would be discovered, based on the totality of the circumstances. *See id.* at 238–39, 103 S.Ct. at 2332; *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983). A reviewing court's task is to ensure that the issuing officer has a "substantial basis" for concluding that probable cause existed. *Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332. Here, as the district court found, there is little question that the magistrate had a substantial basis to find probable cause. The agent applying for the warrant was told by a confidential informant that Cheney had given Peterson over $20,000 to keep for drug transactions. In addition, by monitoring telephone conversations the agent heard Cheney himself tell the informant that he had given Peterson $22,000 for that purpose. Taken in aggregate, this information was sufficient to justify issuing the search warrant to discover these funds.

■ We next consider what the police might legitimately have seized upon their legal entry to the Peterson residence. The fourth amendment imposes a particularity requirement on warrants to prevent the use of general warrants to conduct overly sweeping searches. The scope of a search is limited by the events establishing probable cause. *See Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976); *Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir.1987). In this case the searching officers did not limit themselves to seizing the items described by the warrant. In fact, they did not find

any property fitting the descriptions listed in the warrant. The Petersons argue that the evidence seized during this first search must therefore be suppressed.

The Petersons argue that the "plain view" doctrine of *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971), is inapplicable. This rule allows law enforcement officers already legally present to "exceed the original scope of the warrant where they are already engaged in an otherwise lawful search and inadvertently discover contraband or other items the incriminating nature of which is immediately apparent." *United States v. Ellison*, 793 F.2d 942, 948 (8th Cir.), *cert. denied*, 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986); *see also United States v. Butler*, 793 F.2d 951, 953 (8th Cir.1986). As the officers in this case were already lawfully searching the house, we must determine whether the discovery of the drugs and guns was inadvertent and whether it was immediately apparent that those items were evidence of illegal activity.

■ The Petersons voluntarily produced the illegal drugs for the officers, so we have no trouble concluding that the drug seizure was legal. Officers do not need a warrant to ask questions, nor do they need a warrant to seize obviously illegal items presented for their inspection. We now turn to the question of the gun seizure. The officers knew both that Steven Peterson was a convicted felon and that quantities of several illegal drugs had already been discovered, and thus possession of a gun was a criminal offense. The gun discovery was inadvertent. The weapon was found in a tupperware container that might easily have contained the sought after money or financial instruments rather than a handgun. Thus, the drug and weapons seizures fall within the *Coolidge* rule and must be upheld. *See Butler*, 793 F.2d at 953; *cf. Ellison*, 793 F.2d at 948.

■ Finally, since we have held the first warrant and search to be valid, we must uphold the second search as well. The probable cause for this search was based on observations legally made by the officers during the first search. We therefore

conclude that the district court was correct in denying all motions to suppress and allowing the evidence from both searches to be used at trial.

## II.

■■ The Petersons make several other arguments for reversal, all without merit. They claim that counts one and two of the grand jury indictment, charging Steven with conspiracy to distribute a controlled substance and charging both Steven and Mary with tampering with a witness, are insufficient to describe the charges faced.[2] The government argues that these objections have been waived, but we need not rule on this point because we consider the claims to be baseless. "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *see also United States v. Helmel*, 769 F.2d 1306, 1322 (8th Cir.1985). Indictments are normally sufficient unless no reasonable construction can be said to charge the offense. *See United States v. Young*, 618 F.2d 1281, 1286 (8th Cir.), *cert. denied*, 449 U.S. 844, 101 S.Ct. 126, 66

L.Ed.2d 52 (1980). The Petersons charge that the indictment lists nothing more than the statutory language, but this is not the case. The indictment lists both a limiting time frame for the crimes and specifies the types of drugs involved. In view of these limitations we cannot say that the Petersons could have failed to realize exactly what conduct the trial concerned.

## III.

■ The Petersons next contend that Steven's ten-year sentence for solicitation to commit a felony, in violation of section 18 U.S.C. § 373, exceeded the statutory maximum. Section 373 limits the penalty for soliciting a felony to one-half the maximum penalty of the crime solicited. *See* 18 U.S.C. § 373(a) (1982 and Supp. II). The Petersons' argument is that the "crime solicited" is the one Steven was found guilty of: violation of section 1512(b). That crime carries a maximum sentence of ten years, and the Petersons therefore contend that the highest penalty permitted under section 373 is five years' imprisonment. The flaw with this argument is apparent from examining the indictment. It charges Steven with solicitation to violate section 1512(a). Section 1512(a) allows penalties of up to twenty years' confinement, and the ten-year sentence given to Steven under sec-

---

**2.** Counts one and two of the indictment read as follows:

*Count I*

Between about the beginning of 1985, and continuously thereafter and through about May, 1987, in the Northern District of Iowa and elsewhere, STEVEN PETERSON wilfully and knowingly did combine, conspire, confederate and agree together with other persons known and unknown to the Grand Jury to commit the following offenses against the United States:

1. to wilfully and knowingly distribute and possess with the intent to distribute, cocaine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) and

2. to wilfully and knowingly distribute and possess with the intent to distribute, methamphetamine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) and

3. to wilfully and knowingly distribute, marijuana, a Schedule I controlled substance

in violation of Title 21, United States Code, Section 841(a)(1).

This in violation of Title 21, United States Code, Section 846.

*Count 2*

Between about March 17, 1987, and May 16, 1987, in the Northern District of Iowa, STEVEN PETERSON and MARY PETERSON, did knowingly and unlawfully aid and abet an attempt to threaten, use physical force against, and intimidate an individual known to the Grand Jury for the purpose of influencing, delaying and preventing the attendance of that person at an official proceeding; to cause and induce that person to withhold testimony and be absent from an official proceeding; and to prevent that person from providing information to a federal law enforcement official or United States Judge relating to the possible commission of one or more federal offenses, to wit: drug trafficking and related criminal activity.

This in violation of Title 18, United States Code, Section 2 and Section 1512(b).

tion 373 is therefore proper. To violate section 373 it is not necessary that Steven himself violate section 1512(a); only that he solicit someone else to do so. The sentence was within the statutory maximum, and there was no abuse of discretion by the district court in imposing it.

The Petersons further argue that the multiple firearm violation counts filed against Steven are duplicative, and therefore violate the double jeopardy clause of the fifth amendment. The test for duplicative charges is whether each charge requires proof of an element that the other does not. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *United States v. Schrenzel*, 462 F.2d 765, 771 (8th Cir.), *cert. denied*, 409 U.S. 984, 93 S.Ct. 325, 34 L.Ed.2d 248 (1972). Each of the firearm counts filed against Steven Peterson required an element of proof unique to the other charges. Proof was required to show that Steven, as a convicted felon, unlawfully possessed ammunition during the days of *each* search, since each day was a separate offense. Similarly, the possession of a firearm by a convicted felon was a separate offense requiring additional proof. Finally, proof of Steven's controlled substances use was needed to find guilt based on the fourth and last count. Thus, the charges were not duplicative, but simply reflected the broad pattern of Steven's illegal behavior.

Next, the Petersons argue against the admissibility of evidence used to convict them. They argue that the government's use of Steven's prior felony conviction was improper under Federal Rule of Evidence 404(b). District court decisions concerning the admissibility of evidence are subject to an abuse of discretion standard. *See United States v. Horvath*, 731 F.2d 557, 560 (8th Cir.1984). The government used the prior conviction only to impeach Steven's testimony, and the district court was therefore correct to analyze the objection under Rule 609, rather than Rule 404(b). The district court carefully weighed the competing factors, including the possibility of prejudice, and limited the

conviction's use such that we cannot find an abuse of discretion.

Finally, the Petersons claim that the government produced insufficient evidence to convict them of several counts, despite the jury verdicts of guilty. In reviewing for sufficiency all evidence must be viewed in a light most favorable to the government, *see Berrisford v. Wood*, 826 F.2d 747, 754 (8th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 722, 98 L.Ed.2d 671 (1988), and the government is entitled to all reasonable inferences. *See United States v. Grego*, 724 F.2d 701, 704 (8th Cir.1984). Examining the record in this manner convinces us that enough evidence was presented to allow a reasonable jury to return verdicts of guilty. We therefore affirm the judgment of the district court.