UNITED STATES of America, Plaintiff,

v.

James K. VEST, Defendant.

No. 94–00037–04–CR–W–8.

United States District Court,
W.D. Missouri,
Western Division.

Dec. 22, 1995.*

Charles Ambrose, United States Attorney's Office, Kansas City, MO, for plaintiff.

Ronda Reems, Kansas City, MO, for defendant.

## *ORDER*

STEVENS, District Judge.

This case is before the Court on defendant's motion to dismiss either count eight or nine and either count ten or eleven as multiplicitous. The Court has made an independent review of the record and of the applicable law and has carefully analyzed the government's original objections and supple-

* Order affirming filed 12/22/95 (copy attached for verification).

mental responses to the magistrate judge's original and supplemental report and recommendation and concludes that the law cited, the analysis relied on, and the conclusions in the report and recommendation are correct. Firm in its conviction that the war on drugs must be fought with precision weapons and not open-choke shotguns, this Court is even more pessimistic (or realistic) than the magistrate judge in anticipating the unwarranted prejudicial effect on a jury of prosecution of these multiple counts

It is therefore ORDERED

(1) That defendant's motion to dismiss counts as multiplicitous (doc. 1176) is GRANTED;

(2) That the magistrate's report and recommendation, filed on December 18, 1995, and supplemental report and recommendation, filed on December 19, 1995, are ADOPTED IN FULL;

(3) That the government's objection to the report and recommendation, filed on December 21, 1995, is OVERRULED, and

(4) That the government elect on which count for each alleged murder victim it will proceed against each defendant and that the count not selected will be dismissed without prejudice to proceeding on the selected count on each charge of murder as to each defendant.

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS COUNTS AS MULTIPLICITOUS

LARSEN, United States Magistrate Judge.

Before the court is defendant's motion to dismiss either count eight or ten, and either count nine or eleven on the ground that they are multiplicitous. I find that because counts eight and ten and counts nine and eleven charge violations of one statute by the commission of one act in two different contexts, those counts are multiplicitous. Therefore, defendant's motion should be granted.

## I. BACKGROUND

On May 18, 1994, a second superseding indictment was returned charging defendant with one count of conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846; one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii); two counts of murder in furtherance of a continuing criminal enterprise, in violation of 21 U.S.C. § 848(e)(1)(A); two counts of murder while engaging in a drug offense, in violation of 21 U.S.C. § 848(e)(1)(A); and one count of arson, in violation of 18 U.S.C. § 844(i).

At issue in defendant's motion are counts eight through eleven. Specifically, count eight charges that defendant murdered Juan Bojorquez while engaging in the crime of possession with intent to distribute cocaine, count nine charges that defendant murdered Ernest Carbajal while engaging in the crime of possession with intent to distribute cocaine, count ten charges that defendant murdered Juan Bojorquez while engaging in and working in furtherance of a continuing criminal enterprise ("CCE"), and count eleven charges that defendant murdered Ernest Carbajal while engaging in and working in furtherance of a CCE. Codefendants Steven Vest and Mark Vest are also charged in each of these four counts. The following chart summarizes the relevant counts:

| Count | Alleged Victim | Predicate Offense |
|---|---|---|
| 8 | Juan Bojorquez | Possession with intent to distribute cocaine |
| 9 | Ernest Carbajal | Possession with intent to distribute cocaine |
| 10 | Juan Bojorquez | Engaging in and working in furtherance of a continuing criminal enterprise |
| 11 | Ernest Carbajal | Engaging in and working in furtherance of a continuing criminal enterprise |

On February 27, 1995, defendant filed a motion to dismiss two of the homicide counts as multiplicitous. Defendant argues that § 848(e)(1)(A) proscribes only one crime, unlike other statutes which prohibit the commission of more than one crime (citing § 841(a)(1) and (a)(2) as an example).

On March 15, 1995, the government filed a response in opposition to defendant's motion.

The government argues, incorrectly in my view, that the test for determining whether counts are multiplicitous is whether proof of one offense requires an additional fact that proof of the other offense does not require.[1] The government then concludes that this test is met because each homicide count incorporates the predicate offenses; therefore, counts eight and nine require proof that defendant possessed with intent to distribute cocaine, and counts ten and eleven require proof that defendant was working in furtherance of a CCE. Finally, the government concedes that:

> if convictions on both alternative theories are returned, that they will merge for sentencing purposes, and also concedes that an instruction to the jury that these counts represent alternative theories of prosecution based upon the same alleged acts of the defendants (not additional murders) is appropriate.

On March 16, 1995, the government filed a supplemental response arguing that:

> the Supreme Court specifically held that the successive prosecution prong of the Double Jeopardy Clause did not apply to counts prosecuted in the same case, and that the only prohibition of the Double Jeopardy Clause applicable to counts within the same prosecution is the prohibition against successive or repetitive sentences for the same criminal violations.

Finally, on October 18, 1995, the government filed a second supplemental response directing the court's attention to *Fuller v. United States*, 407 F.2d 1199, 1223-24 (D.C.Cir.1967), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969), in which the court held that it was not error to charge in separate counts first degree murder and felony murder since the offenses are distinct and have separate elements.

## II. MULTIPLICITY

■ The term 'multiplicity' refers to the charging of a single offense in several counts. *United States v. Dixon*, 921 F.2d 194, 195

(8th Cir.1990); *United States v. Kazenbach*, 824 F.2d 649, 651 (8th Cir.1987). The vice of this practice is that multiple sentences may result, or it may suggest to the jury that the defendant committed more than one crime. *United States v. Dixon*, 921 F.2d at 195.

■ The government argues that the test for determining whether counts are multiplicitous is described in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), held that "where the same act or transaction constitutes a violation of *two distinct statutory provisions*, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." (emphasis added). However, as is apparent from the above quoted language, *Blockburger* is used when the same act constitutes a violation of *two distinct statutory provisions*. That is not the case here.

Counts eight and nine charge violations of 21 U.S.C. § 848(e)(1)(A). Counts ten and eleven charge violations of 21 U.S.C. § 848(e)(1)(A). The alleged murder victim in counts eight and ten is Juan Bojorquez. The alleged murder victim in counts nine and eleven is Ernest Carbajal. Therefore, the indictment charges the murder of two persons, which is a violation of one statute, in four separate counts. These counts are clearly multiplicitous.

The cases cited by the government are inapposite. First the government cites *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), which held that separate convictions and sentences were appropriate where the defendant was charged with one count of conspiracy to import marijuana (21 U.S.C. § 963) and another count of conspiracy to distribute marijuana (21 U.S.C. § 846), each arising from the same overall agreement. However, that case

---

1. The government cites *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) for this proposition. However, the Court in *Blockburger* held that the test is whether proof

of *each* offense requires an additional fact that proof of the other offense does not, not whether proof of *one* offense requires an additional fact that the other does not.

charged violations of two separate statutes, and the Court appropriately used the *Blockburger* analysis. As mentioned above, this is not a case of one act violating two separate statutes.[2]

█ Next, the government argues that any danger inherent in the charging of multiple counts under the "same statute for the same act" lies only in the potential for multiple sentences for the same conduct and, where that danger is removed, such multiple counts and convictions are permitted, citing *Gerberding v. United States*, 471 F.2d 55 (8th Cir.1973). The government quotes the following portion of the *Gerberding* case:

> Although more than one sentence is prohibited, the consummated crime may well encompass several ... offenses described by the statute. Thus there is no contradiction in permitting multiple counts ... and multiple convictions, and at the same time prohibiting multiple sentencing.

In that case, the defendant was charged with the following three counts:

Count one: entering a bank with intent to commit larceny, in violation of the second paragraph of 18 U.S.C. § 2113(a).[3]

Count two: taking money from persons by force, violence and intimidation, in violation of the first paragraph of 18 U.S.C. § 2113(a).

Count three: taking and carrying away bank money with intent to steal, and assaulting two persons while committing such offense, in violation of 18 U.S.C. §§ 2113(b) and 2113(d).

The legal discussion in *Gerberding* centered on the "lesser and greater offenses under the Bank Robbery Act". The court cited *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), which held that "in establishing a series of greater and lesser offenses under the bank robbery statute, Congress did not intend to pyramid the penalties therefor." In fact, the exact quote of the *Gerberding* court, which was edited by the government in its response is as follows:

> [A]lthough more than one sentence is prohibited, the consummated crime may well encompass several *of the graduated* offenses described by the statute. Thus there is no contradiction in permitting multiple counts *of an indictment under § 2113*, and multiple convictions, and at the same time prohibiting multiple sentencing.

*Gerberding v. United States*, 471 F.2d at 58.

Section 2113(a) criminalizes bank robbery with the use of force or intimidation, or entering a bank to commit a felony, or the attempt to do so. Section 2113(b) criminalizes conduct which is a less severe form of that prohibited in the first paragraph of § 2113(a): § 2113(a) prohibits taking by force, violence or intimidation, while § 2113(b) prohibits mere taking. And § 2113(d) enhances the penalty for a crime under § 2113(a) or (b) if an assault is committed or if a dangerous weapon is used. Indeed, the punishments outlined in the subsections of § 2113 confirm the statute's pyramiding nature: 1 year for taking less than $100, 10 years for taking more than $100, 20 years for taking by force, violence or intimidation, and 25 years for assaulting someone or using a dangerous weapon. The following chart summarizes the proscribed conduct and the statutory sentences in § 2113:

---

2. The government also offers for purposes of analogy *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), *United States v. Maull*, 806 F.2d 1340, 1347 (8th Cir.1986), *cert. denied*, 480 U.S. 907, 107 S.Ct. 1352, 94 L.Ed.2d 522 (1987), and *United States v. Medina*, 940 F.2d 1247 (9th Cir.1991), which held collectively that CCE counts and conspiracy counts under 21 U.S.C. § 846 may be charged in separate counts. However, as discussed previously, this is not a case wherein the two challenged counts charge violations of two separate statutes.

3. The portions of § 2113 relevant to *Gerberding* are as follows: § 2113(a) prohibits (in the first paragraph) taking by force, violence or intimidation property or money belonging to a bank, and (in the second paragraph) entering a bank with intent to commit larceny or a felony against the bank. § 2113(b) prohibits taking money belonging to a bank. § 2113(d) prohibits assaulting or putting in jeopardy by use of a dangerous weapon the life of any person while committing an offense proscribed in § 2113(a) or (b).

| Statute | Conduct | Penalty |
|---|---|---|
| § 2113(b) (second paragraph) | Taking less than $100 from a bank | 1 year in prison |
| § 2113(b) (first paragraph) | Taking more than $100 from a bank | 10 years in prison |
| § 2113(a) | Taking by force and violence or by intimidation<br>or<br>Entering a bank with the intent to commit a felony | 20 years in prison |
| § 2113(d) | Assaulting a person or using a dangerous weapon while engaging in any conduct prohibited by the above sections | 25 years in prison |

The statute at issue in defendant's case is unlike the bank robbery statute discussed in *Gerberding*. Section 848(e)(1)(A) of Title 21 states as follows:

> [A]ny person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

This statute does not contain graduated punishments for graduated offenses like § 2113. Section 848(e)(1)(A) proscribes one act (killing) in three different contexts: (1) while engaging in or working in furtherance of a CCE; (2) while engaging in the manufacture, distribution or possession with intent to distribute a controlled or counterfeit substance; or (3) while importing a controlled substance. A conviction for a murder committed in ·any of these three contexts may be punished by 20 years to life in prison or by death.

Therefore, the government's reliance on *Gerberding v. United States* is misplaced.

Finally, in its second supplemental response, the government directs the court's attention to *Fuller v. United States*, 407 F.2d at 1223–24, which held that "[t]here was no anomaly in indicting appellant for both first degree premeditated murder and first de-

gree felony-murder." Again, that is an example of one act which violates two separate statutes, which is not the case here.

The government provides no legal authority for its proposition that a defendant can be charged for a single act in two separate counts for two violations of the same statute. All of the cases cited by the government deal with either one statute proscribing two separate acts or one act violating two separate statutes. As discussed above, 21 U.S.C. § 848(e)(1)(A) provides a penalty range for committing one act in three different contexts.

An analogous statute is 18 U.S.C. § 922(g) which reads as follows:

> (g) It shall be unlawful for any person—
>
> (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;
>
> (2) who is a fugitive from justice;
>
> (3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));
>
> (4) who has been adjudicated as a mental defective or who has been committed to a mental institution;
>
> (5) who, being an alien, is illegally or unlawfully in the United States;
>
> (6) who has been discharged from the Armed Forces under dishonorable conditions;
>
> (7) who, having been a citizen of the United States, has renounced his citizenship; or
>
> (8) who is subject to a court order that—
>
> > (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
> >
> > (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury,

to ship or transport in interstate or foreign commerce, or to possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

For purposes of illustration, consider the following scenario: John Doe, a foreign resident, obtains temporary lawful residency in the United States. He subsequently meets and marries Jane Doe. Due to his deteriorating mental condition, John Doe is committed to a mental institution. Upon his release, he becomes addicted to cocaine and begins physically abusing his wife. He is subsequently arrested and convicted of distributing cocaine. Due to his conviction, John Doe is deported. He subsequently unlawfully enters the United States and again distributes cocaine and is arrested. However, prior to trial, he escapes from custody. Due to John Doe's prior assaultive behavior, Jane Doe obtains a court order restraining John Doe from harassing, stalking or threatening her. After the issuance of that order, John Doe is arrested outside the home of Jane Doe and a firearm is found in his coat pocket.

Under the government's theory, this one act by John Doe—possessing a firearm—may be the subject of a six-count indictment, all six counts charging violations of 18 U.S.C. § 922(g):

Count one: possession of a firearm after having been convicted of a felony.

Count two: possession of a firearm by a fugitive from justice.

Count three: possession of a firearm by a person addicted to a controlled substance.

Count four: possession of a firearm after having been committed to a mental institution.

Count five: possession of a firearm by an illegal alien.

Count six: possession of a firearm by a person subject to a court order described in § 922(g)(8).

Under this scenario, John Doe is charged with six counts of possessing a firearm (one act) in violation of 18 U.S.C. § 922(g) (one statute), in six different contexts. As discussed above, the recognized dangers of multiplicitous counts is that multiple sentences may result, or it may suggest to the jury that the defendant committed more than one crime. A defendant in John Doe's circumstances is not only faced with the possibility of six ten-year sentences rather than one, he is also faced with a jury who may perceive him as being a multiple offender even though he committed only one crime.

Clearly, this example of a six-count indictment against John Doe for possessing a weapon on one occasion is preposterous. However, the indictment in the instant case does exactly the same thing. It charges defendant with committing murder (one act) in violation of 21 U.S.C. § 848(e)(1)(A) (one statute) while working in furtherance of a CCE and possessing with intent to distribute cocaine (two different contexts).

The government in this case concedes that if convicted of all four counts, defendant can be sentenced for only two of those counts. However, this does not alleviate the second recognized problem with multiplicitous indictments: that it may suggest to the jury that the defendant committed more than one crime. That danger is certainly present here. The counts in their current condition charge defendant with four murders. The jury's perception of defendant's dangerousness and the likelihood that he may be perceived as a "mass murderer" may well effect the jury's deliberations. Making that danger even more likely is the fact that the government chose to charge the murder of Jill LaMarre in only one count. This suggests that the murders of Juan Bojorquez and Ernest Carbajal were somehow worse than the murder of Jill LaMarre.

For all of the above reasons, I find that counts eight and ten, and counts nine and eleven are multiplicitous.

■ Defendant moves this court to order the government to elect one count of each set of multiplicitous counts on which to proceed at trial, which is the appropriate remedy. *See United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir.), *cert. denied*, 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981). Because the homicide counts are multiplicitous, the government should be required to so elect.[4]

### III. CONCLUSION

I find that because counts eight and ten and counts nine and eleven charge violations of one statute by the commission of one act in two different contexts, those counts are multiplicitous and the government should be required to elect on which count for each murder victim it will proceed. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order granting defendant's motion to dismiss on the grounds of multiplicity and requiring the government to elect before trial on which counts it wishes to proceed.

Counsel is advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of receipt of a copy of this report and recommendation to file and serve specific objections, unless an extension of time for good cause is obtained.

Kansas City, Missouri, Dec. 18, 1995.

### SUPPLEMENTAL REPORT AND RECOMMENDATION

On December 18, 1995, I filed a Report and Recommendation to grant defendant's motion to dismiss two counts of the indictment on the ground that they are multiplicitous. On December 19, 1995, the government telephoned my office and directed my attention to *United States v. Peterson*, 867 F.2d 1110 (8th Cir.1989), and *United States v. Munoz–Romo*, 989 F.2d 757 (5th Cir.1993), as additional support for its original argument that the homicide counts in the indictment are not multiplicitous. The government's position is that these cases undermine my analogy to 18 U.S.C. § 922(g) in the Report and Recommendation. I have read those cases and adhere to my original recommendation.

In *United States v. Peterson*, the police obtained a search warrant to search the defendant's home. During that search, a .22 caliber handgun and ammunition were seized. Police also observed, but did not seize, "several holsters and other weapons paraphernalia". Those items were recovered during a second search conducted two days later. The relevant counts of the indictment in that case charged three counts of unlawful possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of unlawful possession of firearms and ammunition by a user of controlled substances, in violation of 18 U.S.C. § 922(g)(3). The court of appeals did not give any further detail of the facts in that case.

In response to defendant Peterson's argument on appeal that the multiple firearm violations were duplicative, the court said:

The test for duplicative charges is whether each charge requires proof of an element that the other does not. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *United States v. Schrenzel*, 462 F.2d 765, 771 (8th Cir.), *cert. denied*, 409 U.S. 984, 93 S.Ct. 325, 34 L.Ed.2d 248 (1972). Each of the firearm counts filed against Steven Peterson required an element of proof unique to the other charges. Proof was required to show that Steven, as a convicted felon,

---

4. Other available remedies include: (1) reindictment in which the two murder counts would charge the killings "while engaging in the crime of possession with intent to distribute cocaine and while engaging in and working in furtherance of a continuing criminal enterprise." It is well-settled that indictments should charge in the conjunctive but are proved in the disjunctive. *United States v. Pate*, 932 F.2d 736, 737 n. 2 (8th Cir.1991). Or (2) the attorneys may stipulate to inserting the CCE language in the possession counts and amending the indictment by interlineation. I hope that all counsel will explore the latter option.

unlawfully possessed ammunition during the days of *each* search, since each day was a separate offense. Similarly, the possession of a firearm by a convicted felon was a separate offense requiring addition proof. Finally, proof of Steven's controlled substances use was needed to find guilt based on the fourth and last count. Thus, the charges were not duplicative, but simply reflected the broad pattern of Steven's illegal behavior.

*United States v. Peterson,* 867 F.2d at 1115 (emphasis in the original).

The sparse facts along with the extremely brief discussion of this issue certainly do not provide a basis to conclude that multiple counts of violations of 18 U.S.C. § 922(g) may be charged on the basis of one act of possessing one gun, especially in light of subsequent holdings by other courts and the position of the United States Solicitor General as discussed below. The court's brief discussion on this issue, which consists of six sentences, does not identify the defendant's contention beyond the general argument that the multiple counts violate the double jeopardy clause, does not make clear how much ammunition or how many guns were seized, and does not indicate whether the 922(g)(3) charge was based on possession of the same firearm and at the same time as one of the 922(g)(1) charges. The court's straightforward *Blockburger* analysis leads to the conclusion that "the charges were not duplicative". This certainly does not establish clear precedent that one act of possession of one firearm may form the basis of more than one count under § 922(g).

The second case cited by the government, *United States v. Munoz–Romo,* is a fifth circuit case wherein the defendant was charged with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and possession of the same firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5). The fifth circuit originally upheld the conviction, *United States v. Munoz–Romo,* 947 F.2d 170 (5th Cir.1991). However, in response to a petition for writ of certiorari, "the Solicitor General, taking a position different from that asserted in [the court of appeals] by the

government, confessed error as to our upholding two such sentences and urged that the case be remanded for dismissal of one of the two." *United States v. Munoz–Romo,* 989 F.2d at 758. The Supreme Court granted certiorari, vacated the judgment, and remanded "for further consideration in light of the position asserted by the Solicitor General...." *Munoz–Romo v. United States,* 506 U.S. 802, 113 S.Ct. 30, 121 L.Ed.2d 4 (1992).

In its subsequent opinion, the court stated that:

Both Munoz–Romo and the government rely on *United States v. Winchester,* 916 F.2d 601 (11th Cir.1990), a case factually on point with the present case, which held that the subdivisions of § 922(g) do not support separate penalties for possession of a single weapon.... In *Winchester,* the Eleventh Circuit noted that application of the *Blockburger* test would yield a different result (the result we later reached), but found in the statute's structure and legislative history a "plainly expressed contrary view on the part of Congress" that supported the defendant's interpretation. *Id.* at 606–07 (quoting *Garrett v. United States,* 471 U.S. 773, 779, 105 S.Ct. 2407, 2412, 85 L.Ed.2d 764 (1985))....

The government's brief on remand summarizes the Solicitor General's position before the Supreme Court: The Solicitor General essentially adopted the Eleventh Circuit's position in *Winchester* and argued that:

We believe that the language and structure of Section 922(g) disclose Congress's clear intent not to impose cumulative punishments when the same incident violates two subdivisions of subsection (g). The two subdivisions at issue here are found in a single subsection of a statute that prescribes a single penalty for all of those subdivisions. *See United States v. Winchester,* 916 F.2d 601, 605 (11th Cir.1990) ("Under 18 U.S.C. § 924(a)(2), Congress provided criminal penalties for the violation of subsection (g) of section 922, but it did not list separate penalties for the separate subdivision of subsection (g)."). Moreover, "each subdivision of subsec-

tion (g) differs only in its requirement that the offender have a certain 'status' under the law." *Ibid.* And the statute's structure indicates that Congress sought "only to bar the possession of firearms by certain types of persons that it considered dangerous," and not to punish persons "solely for having a certain status under the law." *Id.* at 605–606. Indeed, to conclude otherwise would mean that "a convicted felon who is also a fugitive from justice, a drug addict, a 'mental defective,' and an illegal alien, could be sentenced to five consecutive terms of imprisonment for the same incident, namely, the possession of a firearm." *Id.* at 607.

*United States v. Munoz–Romo,* 989 F.2d at 758–759.

The court distinguished *Blockburger v. United States* since *Blockburger* involved conduct illegal under two different statutes, and held that "the *Blockburger* rule is not controlling." *United States v. Munoz–Romo,* 989 F.2d at 759.

Finally, in *United States v. Winchester,* 916 F.2d 601 (11th Cir.1990), the defendant was charged with one count of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), and one count of possessing a firearm while a fugitive from justice, in violation of 18 U.S.C. § 922(g)(2). Both counts were based on one act of possessing one firearm. On appeal, the government argued that the conviction of both counts was proper under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

■ The court of appeals held that *Blockburger* was not applicable since that case dealt with one act which violated two different statutes, and also pointed out that the *Blockburger* test "only provides guidance in ascertaining Congressional intent." The *Blockburger* test "must of course yield to a plainly expressed contrary view on the part of Congress." *Garrett v. United States,* 471 U.S. 773, 778–779, 105 S.Ct. 2407, 2412, 85 L.Ed.2d 764 (1985). After a thorough analysis, the court held that Congress did not intend to provide for the punishment of a defendant under two or more separate subdivisions of 18 U.S.C. § 922(g).

As discussed in the original Report and Recommendation, the counts in the indictment charging James Vest with the murder of Juan Bojorquez and Ernest Carbajal are multiplicitous because they charge defendant with committing murder (one act) in violation of 21 U.S.C. § 848(e)(1)(A) (one statute) while working in furtherance of a continuing criminal enterprise and while possessing with intent to distribute cocaine (two different contexts). None of the statutes offered by the government are analogous to 21 U.S.C. § 848(e)(1)(A). However, I find that 18 U.S.C. § 922(g) is analogous, and the cases discussed above, as well as the opinion of the United States Solicitor General, support my conclusion. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and applicable law including the cases discussed in this supplemental report and recommendation, enter an order granting defendant's motion to dismiss on the ground of multiplicity.

Kansas City, Missouri, Dec. 19, 1995.