# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3472

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal From the United States |
| | * | District Court for the |
| Earnest Jesse Richardson, also | * | District of Minnesota. |
| known as Ernest Jesse Richardson, | * | |
| also known as Torrence C. Epps, | * | |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted: June 23, 2005
Filed: August 19, 2005 (Corrected: 08/24/05)

_____

Before MELLOY, HEANEY, and GRUENDER, Circuit Judges.

_____

HEANEY, Circuit Judge.

Earnest Jesse Richardson was convicted following a jury trial on two counts: being a felon in possession of a firearm, and being a drug user or addict in possession of a firearm. He was sentenced to 103 months imprisonment on each count, to be served concurrently. On appeal, Richardson (1) challenges the district court's decision not to suppress evidence and statements; (2) claims his counsel was ineffective; and (3) claims that his sentence improperly imposed penalties on

duplicative counts, pursuant to an unconstitutional guidelines scheme.[1] We affirm in part and reverse in part.

## BACKGROUND

On September 18, 2002, at approximately 10:00 a.m., two Minneapolis Police officers, Corporal Francisco Javier Porras and Officer Laura Hanks, were patrolling a neighborhood in North Minneapolis. As the officers drove down Hillside Avenue in their marked squad car, they saw a group of three men, including Richardson, gathered on the corner a block away. When the men saw the squad car, they split up, each walking in a different direction. The officers followed Richardson, who repeatedly looked back at the squad car as he walked up Illion Avenue. He entered the enclosed porch of a residence and knocked on the door. The officers stopped their car across the street from the house, and Officer Hanks partially exited the passenger side of the squad car and called to Richardson over the vehicle. At the time, she was separated from Richardson by the car, street, and sidewalk. Corporal Porras remained in the vehicle.

Officer Hanks asked Richardson if he knew who lived in the house, and Richardson responded that he had not done anything wrong. He then left the porch. Corporal Porras, who was still sitting in the squad car, shouted to Richardson and asked whether he knew the people that lived in the house. Richardson did not respond. Officer Hanks asked Richardson if they could talk to him. Richardson repeated that he had not done anything wrong and then sprinted between the houses into the alley.

---

[1]Richardson does not challenge the sufficiency of the evidence on either count.

Officer Hanks chased Richardson on foot while Corporal Porras followed in the squad car. Porras saw Richardson jump over a chain link fence. While attempting to intercept Richardson, Porras crashed the squad car, which Richardson bolted around. A probation officer in the area, Joseph Longueville, saw Richardson running toward him and moved to intercept him. At this point, Richardson surrendered to the officers, and was placed in the back of the crashed squad car.

Officer Hanks and another officer searched for contraband on the Illion Avenue porch Richardson had entered earlier, as well as in the yard of the residence, but did not find anything. Corporal Porras then searched the area near the yard of 1561 Hillside Avenue, a nearby residence, and found a wallet containing crack cocaine and Richardson's identification, as well as a firearm near the rear steps of the house.

With Richardson in the back of the squad car, the officers drove back to where the items had been recovered to verify the addresses involved in Richardson's attempt to flee. While parked in front of 1561 Hillside Avenue, Richardson allegedly said without prompting that he was responsible for the drugs but not the gun. He had not received a Miranda[2] warning at the time. The next day, Richardson met with Sergeant Granroos, who advised Richardson of his Miranda rights. Richardson waived his rights and repeated the statements he had made the previous day, indicating that he was responsible for the drugs, but not the gun.

Charges were filed against Richardson in state court. Richardson claimed that he had been illegally seized prior to his flight from the police, and moved to have the subsequently discovered evidence and statements suppressed. Ronnaye Riggins, the resident of the house whose porch Richardson entered, testified that he was a friend of Richardson's and that Richardson was a frequent guest at the house. On February 4, 2003, the state district court concluded that Richardson was illegally

---

[2]Miranda v. Arizona, 384 U.S. 436 (1968).

seized during his pre-flight encounter with the police, and granted the defendant's motion to suppress.

On March 11, 2003, a federal grand jury returned a two-count indictment charging the defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and being a drug user or addict in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3). Richardson again moved to suppress the evidence and statements because he claimed his pre-flight encounter with the police was an illegal seizure. He also argued that the federal court was bound by the state court's determination that he was illegally seized. The magistrate rejected these arguments and recommended denying the motions to suppress; the Report and Recommendation was adopted in its entirety by the district court. Two weeks later, Richardson failed to appear for a mandatory drug test, a condition of his pretrial release. He also failed to appear for his trial on July 21, 2003, and a warrant was issued for his arrest. On December 10, 2003, Richardson was apprehended after making a wrong turn down a one-way street in front of a police officer. When he was searched, officers found crack cocaine and a crack pipe.

At trial, Richardson stipulated that he was a felon, but did not stipulate as to his status as a drug user or addict. The prosecution offered evidence that Richardson's left ring finger print was found on the gun recovered by officers following Richardson's flight. The jury convicted Richardson on both counts of the indictment.

At sentencing, Richardson argued, based on the recently issued Blakely[3] opinion, that the guidelines were unconstitutional. The district court found that Richardson had a criminal history category of V and that his total offense level was 24, resulting in a guidelines range of 92 to 115 months. The judge stated that his

---

[3]United States v. Blakely, 542 U.S. 296 (2004).

sentence would be unaltered if the guidelines were not mandatory. He then sentenced Richardson to 103 months on each count, to be served concurrently, with three years supervised release, and a mandatory special assessment of $100 for each count.

Richardson appeals to this court claiming that: (1) his initial encounter with the police was an illegal seizure and that all evidence subsequently obtained should have been suppressed; (2) his statements made in custody should also be suppressed; (3) evidence regarding Richardson's failure to meet the conditions of his release was irrelevant and should not have been presented to the jury; (4) he was denied effective assistance of counsel; (5) his drug use and status as a felon should have been merged for sentencing purposes; and (6) the case should be remanded for resentencing in light of Booker.

**ANALYSIS**

I. Illegal Seizure

The Fourth Amendment protects against unreasonable searches and seizures. Not every encounter between a police officer and a citizen is an unreasonable seizure under the Fourth Amendment. A seizure has occurred "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). "[M]ere police questioning does not constitute a seizure." Florida v. Bostick, 501 U.S. 429, 434 (1991). "'[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions.'" Id. (quoting Florida v. Royer, 460 U.S. 491, 497 (1983)). The court determines whether an encounter constitutes a detention or seizure by determining whether, taking into account all the circumstances of the encounter, the police conduct would have communicated to a reasonable person that he was not

free to "'ignore the police presence and go about his business.'" Id. at 473 (quoting Michigan v. Chesternut, 486 U.S. 567, 569 (1988)).

Applying these principles to Richardson's initial encounter with the officers, Richardson was not seized at that time. The officers' squad car stopped on the opposite side of the street. One officer stepped out of the vehicle and called to Richardson from over the top of the squad car. Neither officer displayed a weapon, threatened physical force, or told Richardson to stop. They asked whether Richardson knew who lived in the house, and whether they could talk to him. These circumstances simply do not amount to a seizure under our circuit's precedent. The officers' attempt to apprehend Richardson during his flight also did not amount to a seizure. California v. Hodari D., 499 U.S. 621, 629 (1991) (holding that a suspect who fled a police car was not seized when the police gave chase or shouted to him to stop, but only when the police actually captured and restrained him). Thus, Richardson had not been seized by the time he lost possession of his identification and contraband.

Richardson further argues that his Fourth Amendment rights were violated by the search that resulted in the discovery of the firearm and crack while he was detained in the squad car. The district court held that Richardson had abandoned those objects, and any expectation of privacy he maintained in the items was lost. United States v. Chandler, 197 F.3d 1198, 1200 (8th Cir. 1999); see also United States v. Davis, 103 F.3d 660, 671-72 (8th Cir. 1996) (recognizing that property may be considered abandoned where it is discarded or disowned). We review that decision for clear error, United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994), and find none. Accordingly, we affirm the district court's denial of Richardson's motion to suppress.

II. Statements Made in Custody

Richardson argues for the first time on appeal that his statements while in the squad car should have been suppressed because he had not been advised of his Miranda rights. Voluntary statements that are not the product of police questioning or police action likely to produce an incriminating response are admissible. United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000). Whether specific conduct is designed to produce an incriminating response is determined from the perspective of the suspect, without regard for the actual intent of the police. We have held that a factual description of the state of an investigation, without additional questioning or coercion, is not an interrogation. See United States v. Allen, 247 F.3d 741, 765 (8th Cir. 2001) (reversed on other grounds) (holding that informing a suspect that he had been identified in a lineup was not in itself an interrogation).

Richardson's interaction with the officers in the squad car was not the functional equivalent of an interrogation because the officers were discussing the evidence between themselves and did not elicit any information from Richardson. Nor were the officers applying any indirect emotional pressure on Richardson to talk. The words and actions of the police officers were not the type of actions the police "should know are reasonably likely to elicit an incriminating response" from Richardson. Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

III. Evidence of Post-Arrest Drug Use and Flight

At trial, the prosecution entered evidence that Richardson fled the police when they attempted to apprehend him while he was on pretrial release. Richardson claims that his evasive behavior, not giving his real name to officers and then fleeing, was not relevant to the firearm charge before the jury, and that the evidence was

prejudicial. The district court allowed the testimony as relevant to Richardson's consciousness of guilt.

This evidence was probative on an essential element of the charges against Richardson: that he was an addict or user of controlled substances. Richardson did not stipulate to this fact, and the prosecution was therefore required to bring evidence of Richardson's drug use. The evidence offered consisted of Richardson's failure to attend scheduled drug tests, his flight from the police, and the small amount of cocaine found on his person when he was apprehended. The court found that the flight and his failure to appear for mandatory drug tests showed a consciousness that his drug use would be discovered if he were tested. Because this evidence is directly relevant to an element of the crime charged, the district court did not abuse its discretion by admitting it at trial.

IV. Ineffective Assistance of Counsel

Richardson had four different defense attorneys during his trial, and claims that they were collectively ineffective. Richardson points to numerous errors at the suppression hearings and at trial. These claims are typically not heard on direct appeal, and should be addressed in a § 2255 motion brought pursuant to 28 U.S.C. § 2255. United States v. Logan, 333 F.3d 876, 878 (8th Cir. 2003). Richardson does not claim that any exception applies that would warrant considering his claim on direct appeal.

V. Sentencing Based on Drug Use and Felon Status

Richardson next argues that the counts against him are essentially the same and should have been merged at sentencing into a single offense: a person of disqualified status (here, a felon and a user of controlled substances) who possesses a firearm. Richardson was sentenced concurrently, but was assigned a $100 special assessment for each count.

We review de novo the district court's finding that Counts One and Two are separate offenses. United States v. Walker, 380 F.3d 391, 393 (8th Cir. 2004). Section 922(g) makes criminal the possession of a firearm by any one of nine classifications that Congress considers dangerous. 18 U.S.C. § 922(g). The Eighth Circuit has not addressed whether "the language and structure of § 922(g) disclose a clear Congressional intent not to impose cumulative punishments when, because of the offender's status, possession of a single weapon violates two subdivisions of subsection (g)." United States v. Munoz-Romo, 989 F.2d 757, 759 (5th Cir. 1993).

Eighth Circuit case law makes it clear that the possession of a firearm and ammunition by a felon are separate offenses under § 922(g)(1). Walker, 380 F.3d at 395; United States v. Peterson, 867 F.2d 1110, 1115 (8th Cir. 1989) ("The test for duplicative charges is whether each charge requires proof of an element that the other does not. Each of the firearm counts filed against [the defendant] required an element of proof unique to the other charges."(citation omitted)), abrogated on other grounds by Horton v. California, 496 U.S. 128 (1990). This circuit has also held that the simultaneous possession of several firearms comprises only one offense. United States v. Powers, 572 F.2d 146, 150-51 (8th Cir. 1978); see generally, United States v. Kinsley, 518 F.2d 665 (8th Cir. 1975).

-9-

The government argues that <u>Peterson</u> controls our analysis, suggesting that a case regarding the possession of firearms and ammunition under § 922(g)(1) by a felon and user of controlled substances precludes our finding that Richardson's Counts One and Two should have been merged. We disagree. The Fifth Circuit explained, "we are not persuaded that Congress in § 922 intended to authorize multiple punishments for a single act of possession of a firearm." <u>Munoz-Romo</u>, 989 F.2d at 759. "[T]o conclude otherwise would mean that a convicted felon who is also a fugitive from justice, a drug addict, a mental defective, and an illegal alien, could be sentenced to five consecutive terms of imprisonment for the same incident, namely, the possession of a firearm." <u>Id.</u> (internal citations and quotation marks omitted). Richardson was a felon and drug user in possession of a single gun; there were multiple prohibitions but not multiple crimes, as there were in <u>Peterson</u>. We find the counts should have been merged for sentencing purposes.

VI. <u>Booker</u>

Richardson was sentenced after <u>Blakley</u>, and he challenged the constitutionality of the guidelines at his sentencing hearing. The district court rejected his challenge, but stated that the sentence would be the same, 103 months, if the guidelines were found to be unconstitutional. While it was error to sentence under the mandatory guidelines regime, the government has shown that the error was harmless because the court stated it would have imposed the same sentence under an advisory scheme. <u>See</u> <u>United States v. Thompson</u>, 403 F.3d 533, 536 (8th Cir. 2005).

-10-

**CONCLUSION**

For the reasons cited above, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

GRUENDER, Circuit Judge, concurring in part and dissenting in part.

I concur in all aspects of the Court's opinion and judgment except part V. Because I believe the imposition of separate special assessments for multiple violations of 18 U.S.C. § 922(g) is required by precedent of this Circuit, I respectfully dissent from part V of the Court's opinion.

In *United States v. Peterson*, 867 F.2d 1110, 1115 (8th Cir. 1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128 (1990), we addressed the issue of multiplicity and firearm possession offenses under § 922(g). *See United States v. Walker*, 380 F.3d 391, 394 (8th Cir. 2004). Unfortunately, the facts of *Peterson* are not particularly clear. *See United States v. Johnson*, 130 F.3d 1420, 1425 n.1 (10th Cir. 1997) ("[*Peterson*] provides little detail concerning the facts of the case . . . [so that] it is unclear whether the (g)(3) charge was based on possession of the same firearm and at the same time as one of the (g)(1) charges."). The opinion does, however, describe evidence of Steven Peterson's illegal firearm possession collected from two separate searches. During the first search, law enforcement found a substantial quantity of illegal drugs, a .22 caliber handgun, and ammunition. The second search, conducted two days later, produced "several holsters and other weapons paraphernalia." *Peterson*, 867 F.2d at 1112. The opinion does not mention any firearm other than the .22 caliber handgun found during the two searches nor does it otherwise attribute another firearm to Peterson.

Based primarily on the contraband found during the two searches, Peterson was charged with and convicted of one count of being a drug user in possession of a firearm, in violation of § 922(g)(3), and one count of being a felon in possession of a firearm and two counts of being a felon in possession of ammunition, each in violation of § 922(g)(1). On appeal, Peterson challenged the four counts of conviction on the grounds that the charges were multiplicitious. *Id.* at 1115.

We affirmed all four of Peterson's firearm convictions under "the 'same elements' test of *Blockburger v. United States*, 284 U.S. 299, 304 (1932), which held that charged counts are not multiplicitous if each count requires proof of an element that the other count does not require." *Walker*, 380 F.3d at 394 (citing *Peterson*, 867 F.2d at 1115). With respect to Peterson's possession of the .22 caliber handgun in violation of § 922(g)(1) and § 922(g)(3), we held that the counts were not multiplicitous because Peterson's use of controlled substances was a separate element from his status as a convicted felon. *Peterson*, 867 F.2d at 1115.[4] The separate counts of conviction for being a felon in possession of a firearm and being a drug user in possession of a firearm must have arisen from the only firearm, the .22 caliber handgun, discussed in the opinion. After carefully reading *Peterson*, I therefore conclude that it directly controls the question of whether the district court properly

---

[4]We also held that being a felon in possession of a firearm and being a felon in possession of ammunition were not multiplicitous charges because "the possession of a firearm by a convicted felon was a separate offense requiring additional proof." *Peterson*, 867 F.2d at 1115. Further, we upheld the two convictions for ammunition possession because Peterson "unlawfully possessed ammunition during the days of *each* search . . . [and] each day was a separate offense." *Id.* We then concluded that the § 922(g) charges were not multiplicitous, "but simply reflected the broad pattern of Steven's illegal behavior." *Id.*

imposed separate special assessments for multiple violations of § 922(g) arising from a single act.[5]

I recognize that our holding in *Peterson* regarding the multiplicitous nature of possession offenses under § 922(g) is in conflict with many of the other circuits. *See United States v. Shea*, 211 F.3d 658, 673 (1st Cir. 2000); *United States v. Dunford*, 148 F.3d 385, 389 (4th Cir. 1998); *United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997); *United States v. Munoz-Romo*, 989 F.2d 757, 759 (5th Cir. 1993); *United States v. Winchester*, 916 F.2d 601, 606 (11th Cir. 1990). However, the fact remains that in *Peterson* we appropriately applied the rule from *Blockburger*. *See United States v. Bass*, 794 F.2d 1305, 1308-09 (8th Cir. 1986) (applying the *Blockburger* test to a claim that a single act results in multiple punishment under the Omnibus Crime Control Act). Therefore, in light of our precedent and our requirement that "one panel of this court cannot overrule the decision of another," *United States v. Peltier*, 276 F.3d 1003, 1006 (8th Cir. 2002), I believe we are compelled to hold that § 922(g) permits multiple criminal convictions arising from the possession of a single firearm based on separate prohibitions. Accordingly, I would affirm the district court's imposition of separate special assessments for violations of § 922(g)(1) and § 922(g)(3) arising out of a single firearm possession.

---

[5]Other courts also have interpreted *Peterson* to allow for multiple convictions based on separate subdivisions of § 922(g) for the act of possessing a single firearm. *See, e.g., United States v. Dunford*, 148 F.3d 385, 389 (4th Cir. 1998) (citing *Peterson* for the proposition that "convictions under §§ 922(g)(1) and (g)(3) for same act of possession did not violate the Double Jeopardy Clause"); *United States v. Munoz-Romo*, 989 F.2d 757, 759 (5th Cir. 1993) (interpreting *Peterson* to allow multiple punishment under § 922(g) for a single act of possession); *Id.* at 760 (Barksdale, J., dissenting) (agreeing with *Peterson* that "possession of a single weapon violates more than one subdivision of subsection (g)"); *United States v. Bastian*, 112 F. Supp. 2d 378, 382 (S.D.N.Y. 2000).